Okay, we'll now hear 19-4131 Banner Bank v. Smith. Mr. Call, you may proceed. Yes, thank you, Your Honors. Good morning to you. Thank you for taking the time to consider this matter and thank you also for your service to our country in your capacities as judges. I'm here on behalf of Banner Bank asking this case. I'm here to discuss the case of the unreported bad faith attorneys fees that were entered against the bank after a two-and-a-half-day trial before Judge Wattops. This case, the underlying facts involved a secured loan that was made in Utah. It was for about 2.3 million dollars and the thing that made the case somewhat complicated is that the loan was secured by real property in South Carolina, personal property in Utah, and real property in Oregon. And so when you foreclose a property, for instance in South Carolina, you have to sue to foreclose the property. They don't use trustees and so the bank was required to file this action in order to protect its rights and its collateral and to foreclose the and then in Oregon there were 11 parcels of land and then a condominium and Mr. Smith had signed a personal guarantee on the loan and so the action was commenced. Was it in the nature of applied title action? No, it was in the nature of a foreclosure of a mortgage on the South Carolina property and then trustees on the Oregon properties and then a security interest on the Utah personal property. So why did she need to be included? Okay, she needs to be included because when you sue to foreclose, it's required that you join any party that may have an interest in the property. One of the properties to be foreclosed was the Oregon condominium and the Oregon condominium was owned half by Mr. Smith and half by Mrs. Smith and then the other problem that was separated, there was a divorce that was filed in Florida and it was uncertain what interest she had in these properties and so in order to recover attorney's fees under the Utah FAFSA statute, three mutually exclusive elements are required. First of all... Let me back up. So she needed to be included. Were there any other people who might have had some interest in the property? Yeah, I mean typically when we do those foreclosures, we get a title report. We look to see if other parties have an interest in the property and they're typically joined and that was done in South Carolina and it's always done in connection with the foreclosure. Okay, that's what I was thinking in terms of quiet title, making sure there's no other... This is... I'll go ahead. Let me just ask one question, Judge Phillips, and then with respect to foreclosure though, what were you expecting to do given her one-half interest in the condo? Were you expecting to make her sell her interest? No, no. The foreclosure was only as to his one-half interest in the condominium and the complaint only alleged that it didn't seek to sell her interest. Okay, so what... If it's not, you were not contemplating a foreclosure sale in the complaint? A foreclosure of his interest. So we were looking to foreclose all of the 11 parcels in Oregon, the one-half interest in the condominium, the property in Utah, and then the real property in South Carolina. But there was nothing contemplated in the complaint about selling any interest in the condominium? Not selling her interest in the condominium. It would only be his interest. You can foreclose on a person's partial undivided interest in a parcel of property. So with that, the complaint was alleged in the district court. One last question about that, and then I'll turn to Judge Phillips. So you can foreclose, but was it clear in the complaint that you weren't seeking any sale? I can see why she would feel it was important to her. It is, in fact, the complaint specifically alleged that we were not seeking to foreclose her interest in the property. Okay. It's alleged specifically in the complaint. Okay. Judge Phillips? I guess my question is something you haven't hit on yet, which is, why was she put to the burden of defending this action when there is a release agreement and paragraph 4 of which releases Lori Smith? Why did she need to be involved? She needed to be interested in the condominium. And the rules require, if you're foreclosing a property, you have to join anyone that may have an interest in that property. Including parties that you've released? I'm sorry? Including parties that you've released? Yes. If there's any party that has an interest in the property, you're required to name them. And you do it either in the writ of execution or when it's a judicial foreclosure, you do it. And so the complaint that was filed, Judge Phillips, didn't ask for any relief against her. It simply named her so that if she had an interest in the South Carolina property or the Oregon property or the Utah property, or if she was claiming a full interest in the Oregon property, that she would have a right to protect it. And I'd like to address that because at the outset of the litigation, she indicated and asserted that she had a one-half or a whole interest of the condominium, of 100%. And so when we got to trial, we had obtained an expert witness report from Mr. McQuarrie, who had looked at their tax returns, and it was clear that they had reported to the United States that they each owned a one-half interest. In addition to that, we introduced at trial two title reports that showed she had a one-half interest in the property. And so Mr. McQuarrie was there and we were willing and able to have him take the stand and testify that they had reported on their tax returns that she reflected a one-half interest in the ransom expenses, etc., and that he had reflected a one-half interest. And while we were there and she was on the stand, she says, well, I admit, you don't need to call your expert witness. I'll admit that he has a one-half interest. So as we look at the first prong of this bad-faced statute, we have to determine, did we prevailed on determining that she didn't have an interest in the 11 parcels of property, she didn't have an interest, she only had a one-half interest in the Oregon property, we had a stipulation and a corresponding motion, we prevailed on the fact that she didn't have an interest in the South Carolina property, and we also prevailed that she didn't have an interest in any of the Utah collateral, and that those were done by judgments and orders. So if we look at the first prong of this statute, the bank prevailed on all of these claims completely. And so, in addition to that, Loree Smith filed counterclaims against the bank, and we prevailed on all of her counterclaims except for one through summary judgment, and then the one claim that she had, which was for breach of contract for having been named, we prevailed on that because she failed to prove any damages at the bank. The bank hadn't taken the rents, it hadn't interfered with her ownership or done anything of that nature, there were zero damages that were established. So we prevailed on all of the claims, the declaratory relief claim, and that precludes any award of attorney's fees as a matter of law. The Utah Supreme Court has stated that these elements are mutually exclusive and may not be conflated. That is, each is separate. If we prevail, they cannot recover. If, in fact, if our claim had merit, then they can't recover in a bad faith statute. And if it wasn't in bad faith, they can't recover. So in this case, not only did we prevail, but our claim had merit. The declaratory relief statute says that you can join anybody that may have an interest in the property, and it's kind of governed by Rule 19. Rule 19 says that you're required to join a party that has an interest in the litigation. And again, it doesn't matter whether you're seeking other affirmative relief, all that matters is that they may have an interest in the property. They've been going on in the divorce for almost, I think it's been over eight years. Property shuffles around in a divorce. They're both in from Florida, the action was filed, it was difficult, the bank didn't know whether she would assert an interest in that property or not. So declaratory relief was absolutely proper under the Declaratory Relief Act and under Rule 19. And so we, the bank was proper and it prevailed on its claims. So it is the prevailing party. The issue of damages under Utah law, if you prove no damages, the other parties seem to be prevailing. We've cited that in our brief. Finally, as to the issue regarding bad faith, well let me just first indicate that at the outset of the litigation, there was a motion to dismiss that was filed, you've probably read this in the briefing, but at the outset, Judge Waddup ruled in favor of the bank and stated that Loree Smith was properly joined in the action. And he says the very issues that the bank's counsel raises are the very reasons why we need to have an adjudication of the merits to determine whether or not Mrs. Smith in fact has an interest or does not have an interest and whether the court can grant declaratory relief in terms of any claim in the collateral or other property that American West Bank is claiming an interest in. In 2013, he ruled that in 2013, had she not been properly joined, the bank could have dismissed her at that time. The bank relied on his opinion and his decision from 2013 through the time of trial and his ruling and order was never amended and it became the law of the case and there was never a motion that was ever filed seeking to change that determination. And I cited this court to its governing law on the law of the case and that and then finally on the on that issue, the second element, the judge in his very opinion states that the bank's claim stated a claim for relief. He says that although the banner was able to state a claim to bring Loree into the action, it did so at its own peril. Well that doesn't satisfy the standard for some a claim not having merit. In order to recover under the second prong of the statute, you have to show that the other the non-prevailing party's claim had no merit. Here Judge Wattups ruled that in fact the bank's claim had merit, but watch out you're gonna you're gonna have to pay dearly because you joined her in the action. That was a breach of contract. But that doesn't mean that the claim wasn't valid. Had she suffered damages, she would have been in time to recover damages for having been joined, but she proved not. But the fact that Judge Wattups himself admitted that we had a valid claim means that we were the prevailing party. So we have, or that our claim was not without merit. So not only were we the prevailing party, but our complaint stated a valid claim for relief. And then finally as to bad faith, which is the final element, there's no support for that. The judge had determined that in fact there was bad faith for three reasons. The bank failed to disclose the original trustee until the second day of trial, that the bank altered the trustee, and that the bank intentionally breached the release by naming Loree Smith. First as to the failing to disclose the deed, that's entirely inaccurate. The deed was disclosed in discovery, it was attached to the complaint, it was it was recorded as a matter of public record, and in addition to that prior to trial we had a pretrial order that required the disclosure of all of the exhibits. We disclosed it prior to trial and we attached it, and the opposing counsel said they had no objection to the copy of the deed of trust that was addressed at trial. So the question about that. Excuse me, counsel. Yes. I thought the problem was that the copy that had been provided to them did not show the scribblings on on the that there's no problem with the copy when they didn't know about this scribbling. Because the answer is they didn't know about it because in his response to the pretrial order he indicated objection is not made to the authenticity of the underlying document, rather objection is limited to any of the handwritten additions or deletions, and in addition to that the opposing counsel. That's in the, excuse me, so that's in the pretrial order? He's ordered that that pretrial, those disclosures and any objections be filed prior to trial. It was like 45 or 60 days ahead of trial. The pretrial order was, excuse me, the pretrial order was filed 45 to 60 days before trial? It was with all the exhibits and he had to file a response, and in his response he said I don't object to the authenticity of the deed of trust, only the markings. And in the record show about when those, the copy with the markings was disclosed? They were disclosed, they were attached, they're attached to the complaint, they were attached in the summary judgment motion. The copies with the markings were attached to the complaint? Yes, and we produced them in discovery two years prior to trial. In fact, the opposing counsel said when he had Mr. Smith on I've tried to figure out what in the world the 132 written in blue ink on the left side of the document could possibly mean. So he knew. The 132 is one of the markings at the top. But not all of the markings, right? Not all of them, but the key point on this, and I'm just about out of time, is that after the original deed of trust was produced to the judge, he looked at it and said I can't determine anything from this. It's immaterial. In other words, even when the original deed of trust was provided, it was flown down from Spokane and handed to the judge at trial, he indicated there's nothing. He stated twice. He said I could not reach a conclusion on what the language meant. It's harmless error. It's insignificant. It's irrelevant because it didn't have anything, it wasn't significant what was going on. Okay, don't rush through this. I want to pursue this because this is important and maybe Judge Phillips has follow-up questions before I ask, but go ahead. Well, I'm not, there were markings and then there were other markings. Did the original show any markings that the copy produced for the pretrial order, the copy attached to the complaint, did not show? Was there anything that those didn't show? We'll get to their materiality later, but was there anything visible on the original that was not visible on the copy attached to the complaint or the copy reviewed for the pretrial order? The answer to that would be my understanding is when the judge looked at the original, he said I can see a reference to the name Rick S. and D. E. A. G., but he says those are the only things I can determine from the original that I couldn't determine from the other copies. I can't make any conclusion that they mean anything. Okay, so there was some stuff. You weren't as forthcoming as I would have wished. There was some writing on the original that the opposing party had not seen before the original was produced. Is that correct? Yes, it was just limited to these little markings that the judge looked at that he said he couldn't understand. Right, okay, that goes to materiality. Right. But the judge based, I thought the judge based the bad faith finding in part on the failure to produce the originals because the original had markings that weren't on the copies produced earlier. Did not the judge do that? He said it had been concealed to the second day of trial, which wasn't the case. There had never been a request made for the original to be produced, and in addition to that, when deeds of trust are recorded, they're scanned by the county recorder in color. It's been a matter of public record from the very top of the document through the He said that showed bad faith. Is that what the judge said? Yeah, that was one of his findings of bad faith, and then the other issue of bad faith was that he indicated that the bank had made the alterations to the trustee prior to the litigation, and as we cited, Utah law says, and this 10th Circuit has recognized, that events that occur prior to the litigation are not a basis for a finding of bad faith. We've cited the court to your opinion in Manin Rock, and it indicates you can't make a determination or finding of bad faith based on events that occurred before. The other basis, Judge Hartz, that he found bad faith on was that he indicated that the bank had made the changes to the deed of trust, but in fact, when the defendant, when the defendant, Lurie Smith, presented her evidence at trial, the evidence reflected that the alteration hadn't been made by the bank, but rather the alteration was made between the communication. Thank you, counsel. You're three and a half minutes over already. Okay. Thank you. And for that, your honor, we, just in concluding, we have to order your review. Yeah, you're done. Thank you. You're done. Okay. We'll give you extra time if you need it, Mr. Drummond, but let's try to get it done in 15 minutes. May it please the court. Robert Drummond on behalf of Lurie Smith. Banner Council was very succinct in its, when it was succinct in its description, that the case was complicated because of properties in multiple states. The fundamental fact is the only thing that was complicated in this case and made it complicated is Banner's unilateral, nondisclosed act of altering a deed of trust and then representing to the court that that deed, in fact, encumbered property and then withheld from the court and Lurie through the, up until the time of filing a to summary judgment, withheld that information that that deed had been materially altered. Okay. And why would you draw an inference of bad faith from that when this additional information was totally immaterial? Because the court found, and what the record establishes and standard would be to look at for correctness, is that the claim for declaratory judgment, lack merit, because the bank already knew Lurie had no interest in South Carolina property. There are multiple, there are several bases for the bad faith. I'm asking you about one and you turn to the other. You were saying there's bad faith because the original wasn't produced until the last minute, right before trial. But the only thing that the original showed that the copies did not was totally immaterial. So why would that show bad faith? What possible motive could they have had to conceal the scribbles that had no legal significance whatsoever? Well, there's two acts that constitute bad faith. One is the initial alteration that was disclosed on the copies that was not disclosed. Wait, wait, wait, wait, wait. What, what alteration that wasn't disclosed on the copy? In the complaint, the bank stated this copy that we're attaching is the deed as signed by Mr. Smith and delivered. The bank did not disclose that it had or cause to be altered crossing out Lurie Smith's name in the body as to who the owners of the condominium were or on the signatory page of the deed of trust. The bank withheld that information. We only learned, we only learned at reply to summary judgment that those alterations were made. The bank then. So based on up until that time, you thought Mr. Smith had signed the deed with the scratch, with the crossed out lines already made. We knew he had not, we knew that he signed, but no alterations had been made and what the court found. And I said, so listen to what I say. I think I said it right. Maybe I didn't. What you're saying is until the response to motion, the reply and motion for summary judgment proceedings until then you thought from the complaint that Mr. Smith had signed a document that already had lines crossed out. That's the fact he had signed it earlier. That, that was, that was the information withheld from you. That was the bank's representation that he had signed it with those alterations already. And what difference did that make? Well, because it encumbered property by the terms of the deed, that property could only be encumbered by the way the persons, both people had signed that. And so the bank was seeking to foreclose that property of Maurice Smith, that condominium, knowing that it had a... But how did, how did this, how did this difference affect your client? Ms. Smith was only, was only advantaged by the, by the alteration. No, sir. She was just, she was disadvantaged because the bank, by claiming that this deed was valid, the bank, by claiming this deed was valid, was asserting it could foreclose on Mr. Smith's interest in the property, in the condominium. And how did that affect her? Well, because then as was evidenced at trial, what the court found was that more than likely there was going to then be a partition of that property, and she has now lost her interest. Well, well, counsel just represented that the complaint said that the complaint, that the complaint said that there was no intent to partition and require sale. Judge, Your Honor, throughout this intensive litigation for years, the bank has had a patchwork of explanations regarding what effect the foreclosure action, and there was no evidence at trial as to what the bank intended to do. Well, if we're talking about trial, that's after the full disclosure. Does, are you disputing the complaint says that the bank is not seeking partition of the property and sale of the condo? The complaint is silent as to that, Your Honor. The complaint... Maybe I misunderstood Mr. Call. I thought he said... No, Your Honor. There is no motivational intent articulated by the bank in its complaint. Just that it wants to foreclose his one-half interest. Yes, sir. And that in and of itself was a violation of the release because the release... We'll get to that. We'll get to that later. I'm interested in what the bad faith was with respect to the document. And what does the judge say would have been different if that had been disclosed? How would the proceedings involving her have been different? Well, Judge, there would not be proceeding as the bank... One of the myriad of explanations for why the bank included Marie was by saying it's because... And as Mr. Call just mentioned, she was listed as a tenant by the entirety on the condominium. Well, if the condominium is not properly secured, there's no factual basis to bring, one, a deck action or to foreclose on that property. By the bank altering that deed, it tried to create merit by saying, here's a deed that encumbers and conveys property. But... And that's what the bank represented to the court and to Marie, when in fact, that was not true. And the bank never disclosed, never disclosed. And what Mr. Call has not told you is the bank was so aware of this. The bank, I'm sure, inadvertently left this out of a statement of facts. But the bank was so knowledgeable of this deficiency that Marie, that the condo should never have been included, that her name was on it, was not signed, it was defective, that they went and had another deed signed, prepared and signed, that only encumbered the 11 parcels of land, not the condominium. And there were problems with that. The bank tried to get the original of that. They couldn't. And at that time, that's when they decided, well, we have this deed signed by Mr. Smith. We'll cross out Marie's name. We'll cross out her signature line. We'll cross out the notary. And then the discovered alterations. Now, everybody finally knew that and replied to summary judgment. What we didn't know until the second day of trial, and it was convenient that the bank only produced this copy after the bank's witnesses testified, so Marie couldn't question her about it, is these additional alterations showed a 132 written in blue, which we had never seen before. We had seen 132, but it was always in black and white. So obviously, and then there were blue numbers that were whited out. And then there was a pencil mark, erasures. And what the court determined is that by the bank, two acts of bad faith. One, filing an action based on an altered deed and failing to disclose that. And then on the second day of trial, here are more alterations that had these been disclosed, Marie could have postured her counterclaims and her defenses in line with, well, who made these alterations? What did they mean? What effect did this have? And what the court simply determined, despite what the bank wants to represent to the court now, the court found that to be bad faith, failing to disclose on the second day. But what it really said is, I can't make a determination if these discovered alterations on the second day of trial unilaterally mean that the bank knows that the deed is defective. It didn't suggest at all that the underlying alterations that were failed, failed to be disclosed or the alterations discovered at trial were not bad faith. Did the judge make any determination regarding the validity of the, we'll say it altered deed? Did it say that there was no encumbrance at all on the condo? Judge, that's interesting because that goes to the court's inquiry about jurisdiction. And that was what the two issues were at trial, Marie's counterclaim and the bank's deck action regarding the validity of the deed. And as the bank says repeatedly, the claim at trial, in addition to the breach of contract was the validity of the deed. In a disparate fashion from what the bank represented to this court and its supplemental brief regarding jurisdiction, the bank did not say that in its filing proof of claim with the bankruptcy court, we have a secure claim. That is in fact what the bank has represented to this court. The correct... You're not answering my question yet. Did the district judge, the district court make any determination one way or another regarding the validity of the altered document? We believe... Whether it, whether it, when I say validity, whether it imposed an encumbrance on his interest in the condo. Did it ever make a determination on that? Or has any other... Judge, I believe it did, although you would have to use a transitive property to get there. But this is why I answer it that way. The court in its statement of facts, or its findings of facts, in the original memorandum decision stated this. With the loan in default, in its attempt to obtain a revised deed of trust having failed, Banner Bank determined that it needed to record the defective deed of trust. In the memorandum decision, the district court stated that findings of facts that can be deemed to be conclusions of law but are not so stated, it is the intent of the court that they be so, and vice versa. And Judge, just very quickly, piggy on back. This is... The bank represented in its proof of claim to the trustee court, claimant is asserting a secured claim to the extent of the enforceability in value of the Oregon trustee. So the bank never got to the point, because when the trustee abandoned the property, the bank not only didn't ask the state to be lifted, they objected to Lurie's asking the state to be lifted. So you have the court saying the deed is defective in its finding of fact, and that the bank acknowledged to the bankruptcy court that it is seeking a secured claim only to the extent of the enforceability of the deed. Therefore, it'd be our position, Your Honor, that the bank, one, knew and represented to a U.S. court that it may not be secured because we don't know if it's enforceable. And then you have the bank saying in its finding of facts it's defective. In what way is it defective? Wasn't it the Lane County recorder that wanted that alteration made? The lines crossed through? Your Honor, this was early on in the case. Banner finally abandoned this after it was clear that factually they couldn't support this position. The bank, there was an individual attorney named Dan Egan in Salt Lake City who prepared the deed of trust. The deed of trust enumerated 11 parcels of property, and there was no dispute that James Smith owned those individually. That same deed of trust in the same document enlisted as owners was the condominium enlisted as owner James Smith and Laurie Smith. In order for there to be a valid encumbrance and conveyance as part of that deed of trust by the terms, and this is what the court found, by the very terms of that deed, it needed to be signed by both parties. When the bank saw that there was an error, they asked Dan Egan, do us another deed, get rid of Laurie's name. They do. James Smith signs it, but there's other problems with it. They never get a copy of it. So then the bank goes out and crosses out Laurie's name and says, well, James can encumber his interest in the condominium. Well, the court found, no, you can't do that. If there had been a separate deed of trust for the condominium and only James signed it, that would have been fine. Had the deed itself said, we're bifurcating these pieces of property who we list as owners of the condominium James Smith is intending to convey his interest, that would have sufficed. Had there been, and there were ratified, that in fact, this was the intent of Mr. Smith to encumber these 11 parcels relating to Laurie, more specifically the condominium, that would have survived. None of those things occurred. Instead, what occurred is the bank directly or caused that deed to be materially found that to be in bad faith. For one, it lacked merit because the bank knew you can't give something merit by fabricating a fact. And that's what the bank did. You might have a legal basis to say we're seeking a deck action, but there's no factual basis to seek a deck action or foreclosure on the condominium because there's no interest in it. Oh, wait a minute, let me create an interest in it, and then I can bring an action. That's what the court found to be in bad faith. Did you have more questions, Judge Phelps? That answered my question. So we've spent all your time so far, we have, on the bad faith issue. What about the fact that there was no award of damages, not even nominal damages, on the counterclaim? Doesn't that preclude your collecting under the attorney fee statute? No, sir, because that would not be, we don't believe the bank accurately reflected. The bank gave this court an abridged version of the facts, the findings of the fact, and the abridged version specifically admits the fact that the court found damages as to damages. Is there? Judge, but there's not the requirement necessarily that there be an award of damages. Isn't damages an element? The existence of damages are an element, and what the court found is that she suffered damages. As a matter of fact, the trial record is complete with pages and pages of her testimony articulating how damages occurred. What were those damages? Judge, were any of them other than the expense of litigating? There was her expenditures in participating in the litigation, trial, not trial transcript, deposition transcripts, transportation costs for attorneys to fly to Spokane to take depositions, there were hearing transcripts, there were... But as a matter of law, you're not, those aren't damages under Utah law. Those are not legally cognizable damages. Well, Judge, under Utah law, and we cite this in our brief rather extensively, is the court found those items to be general damages, which would satisfy the element, and more so they served... What do you mean by that? Well, Judge, the court found in its, the bank didn't focus on this. There were two orders, the memorandum decision and then the decision denying the motion to alter amended vacate, where the court spent a significant amount of time discussing the damage issue. And Judge, we would assert the court found that these were more than nominal damages, but Judge, nominal damages in and of themselves would serve to satisfy... Yeah, but they weren't awarded. They weren't awarded. That's your problem. But tell me how these were legally cognizable damages. Because as I understand it, unless the contract, in this case, the release of Ms. Smith, unless that specifically allows recovery of legal fees and expenses and so on, those are not cognizable in the cause of action for breach of that contract. So what were legally cognizable damages that she discussed? It sounds to me like they were all things that you can't collect for a breach of contract. They're not recognized damages. We don't believe that the bank is accurately reflected to the court in Utah law on that issue. The court specifically iterated in its supplemental order denying alter amended vacate that damages to breach of contract could fall into the category of general damages or consequential damages. And this isn't even talking about that nominal damages satisfy the element. The court specifically found that the damages that she testified to a trial, including, well, I've been named as a defendant in a lawsuit. Now I have to go hire an attorney. And then regardless of attorney fees, which may not fall under certain categories of damages, there were expenditures that she incurred and she was damaged in having to defend this lawsuit. And the act of having to go and engage counsel and actively defend the lawsuit that she was never to be a part of in and of itself was the damages. And then the court found. How is that different from any other contract breach? If she wanted, if she used to be awarded contract damages, if she was to be awarded legal fees as damages for breach of that contract, it has to be in the contract. Does it not? Is there any law supporting an award of damages for breach of contract does not specifically permit that judge that that issue was not raised by the bank. The bank one didn't preserve that issue. They don't raise it as an issue that trying to get through the side door and raise it on appeal. You're saying they didn't raise it below. Judge, they did not raise it on appeal. The issue of whether or not damages were satisfied of breach of contract is not raised on appeal in the issue in the issues enumerated by the court and judge. Specifically, this release is different in some ways from a typical contract. This release says we are agreeing not to make you a defendant in a case. And so the very act of making her a defendant in the case inherently caused her damages because she had to go and hire counsel to defend what the very terms of the contract said we will not do. Okay. Thank you, counsel. Any further questions by members of it? Well, you went six minutes over Mr. Call, and I don't blame you. It's my fault, but I'm interested in this case. Mr. Call only went three and a half minutes over, so I'm going to give him two minutes, but not one second more than two minutes. Thank you, Your Honor. First, the court had asked specifically about the foreclosure. Counsel indicated there was nothing in the complaint that the bank was seeking to proclose her interest. I cite the court to the appendix, page 52, paragraph three of the complaint that states which American West is seeking to proclose. Let me back up. And that she does not hold any interest of the property, real or personal, describing the complaint which American West is seeking to foreclose except for Loree Smith's undivided interest as a tenant in the entirety and unit seven as that interest is described in the Oregon trustee. The complaint was clear that there was no foreclosure sought of her interest. Secondly, the issue of nominal damages was raised below. The record is replete with objections that there was no disclosure of damages. Judge Waddups, they asserted that the damages were consequential damages. Judge Waddups denied that and ruled that there were no consequential damages at all. And 338P3, 825. That nominal damages are not recoverable in cases in which actual damages are an element of the cause of action. So this is not a case for nominal damages. The issue was raised below. It was preserved on appeal. The civil judgment entered by Judge Waddups clearly provides that the only amount that was awarded were attorney's fees. He reduced those attorney's fees to the affidavit for all the reasons that are set forth there. So thank you, your honor, for your time this morning. I appreciate it. Thank you, counsel, for tolerating me and good job for both of you. Case is submitted. Counselor excused and we'll be in recess until nine tomorrow morning.